1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Honorable Lauren King

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

LIFEWISE, INC.; and SARAH SWEENY,

     *Plaintiffs*,

     v.

EVERETT PUBLIC SCHOOL DISTRICT;
and IAN B. SALTZMAN, in his official
capacity as the Superintendent of Everet
Public Schools,

     *Defendants*.

No. 2:25-CV-02604-LK

**DEFENDANT'S OPPOSITION TO
MOTION FOR PRELIMINARY
INJUNCTION**

**NOTE ON MOTION CALENDAR:
January 16, 2026**

**PATTERSON BUCHANAN**
**FOBES & LEITCH, INC., P.S.**

1000 Second Ave., 30th Floor, Seattle, WA  98104
Tel. 206.462.6700  Fax 206.462.6701

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

## I.    INTRODUCTION

Defendant, Everett Public Schools (the "District"), serves students within the Everett, Washington community.    Plaintiff, LifeWise, Inc. ("LifeWise") is a national religious organization, operated locally by community members, that offers off-campus religious instruction to students during non-instructional time (lunch and recess).  Plaintiff Sarah Sweeny, a parent of a child attending Emerson Elementary, amongst other parents, established a LifeWise chapter in Everett, Washington with the purpose of providing religious instruction to students in the District, including those that attend Emerson Elementary.

Plaintiffs have asked the Court to "ensure Plaintiffs are treated at least as well as secular groups at Emerson Elementary." Dkt. # 5 at p. 29.  Specifically, they are requesting the Court enjoin District policies that (1) bar LifeWise from engaging in protected First Amendment activity; (2) burden Plaintiffs' free exercise rights through a permission slip policy; and (3) banish the public possession of LifeWise material by students.  *Id.*

Plaintiffs' argument is based on the inaccurate allegations that the District has been hostile and overly burdensome by targeting LifeWise and devising ways, such as revising District policies, to prevent students from attending LifeWise during the school day and limit LifeWise's interactions with District families and students.  To the contrary, the District has not revised any District policies as alleged by LifeWise, nor has it prevented parents from authorizing the release of their students for religious instruction during the school day. Likewise, the District has not denied any such requests or otherwise prevented students from participating in LifeWise. Plaintiffs' mischaracterizations should result in the denial of their motion.

As discussed below, Plaintiffs have failed to prove that they are likely to succeed on the merits of their claims, that they have suffered an irreparable injury, or that the public interest or balance of the equities favors injunctive relief.  Thus, a preliminary injunction should be denied.

DEFENDANT'S OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
CASE NO. 2:25-CV-02604-LK - 2

**PATTERSON BUCHANAN**
**FOBES & LEITCH, INC., P.S.**

1000 Second Ave., 30th Floor, Seattle, WA  98104
Tel. 206.462.6700  Fax 206.462.6701

## II.    FACTUAL BACKGROUND

**A.    The District Serves A Diverse Community.**

The District is a large public school district within the State of Washington serving a diverse community of approximately 20,000 students, from many different backgrounds.. Decl. Mack ¶5.  The District school Board of Directors (the "Board"), is the District's policy-making body and is responsible for establishing the District's goals and policies and approving the District budget. RCW 28A.150.230; Ex. B, Decl. Mack ¶7.

The Board is made up of five elected board members to represent the public's views on how education should be governed locally, with each member serving a six-year term. RCW 28A.343.300.  Currently, Traci Mitchell ("Ms. Mitchell") serves as the President of the Board. The other four directors include Charles Adkins ("Mr. Adkins").  Members of the Board may vote on motions and issues brought before them, and, in doing so, express their own personal views and opinions.  Such  statements do not bind the Board, or represent the Board's position as a whole. Ex. C, Decl. Mack ¶7. Indeed, it is the Board President who speaks on behalf of the Board when making it clear that she is representing a Board position. Ex. C, Decl. Mack ¶7. The Board typically meets twice per month and encourages community members to attend board meetings.  Time during each meeting is reserved for public comment during which community members may provide public comment to the Board. Ex. C, Decl. Mack ¶7.

Central to the District's mission is serving its students and the families within the community, and in doing so, the District is "committed to complying with anti-discrimination laws," both federal and state. Ex. E and F, Decl. Mack ¶7.  Amongst these laws is Washington state law prohibiting discrimination in Washington public schools on the basis of state recognized protected statuses, including religion.   RCW 28A.642.   Additionally, Washington state constitutional law prohibits schools from endorsing or participating in specific religious programs. *Perry v. School Dist. No. 81, Spokane*, 54 Wash.2d 886 (1959).

DEFENDANT'S OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
CASE NO. 2:25-CV-02604-LK - 3

**PATTERSON BUCHANAN
FOBES & LEITCH, INC., P.S.**

1000 Second Ave., 30th Floor, Seattle, WA  98104
Tel. 206.462.6700  Fax 206.462.6701

As part of the District's commitment to serving its diverse community, the District works to accommodate families of all religious backgrounds. Ex. E, Decl. Mack ¶7.  Moreover, "[t]the [Board] recognizes that views and opinions regarding the relationship of the schools and religion are diverse.  While community opinions are important in shaping policy, the [Board] must comply with the United States and Washington State constitutions, federal and state law, and the decisions made by the respective courts when establishing guidelines for making decisions regarding religious related activities and practices." Ex. G and H, Decl. Mack ¶7.  The Board also accepts the Washington State Board of Education declaration that "all students…possess the constitutional right to the free exercise of religion and to have their schools free from sectarian control or influence." *Id*.  The District has established "procedures to preserve the rights of all students within the framework" of these laws. *Id*.

**B.      LifeWise Is A National Organization, Non-Affiliated With The District, And Offers Religious Instruction To District Students At Off-Campus Locations.**

LifeWise is a non-denominational Christian ministry organization that offers off-campus religious instruction during the school day to students at schools nation-wide.  LifeWise offers offsite private religious programming during the school day to public school students.  "This type of extracurricular activity is known as 'Released Time for Religious Instruction,' or RTRI."  Dkt. # 5 at p. 7.

In late 2023, parents – including Plaintiff Sarah Sweeny - at Emerson Elementary School, approached the Emerson Elementary Principal, Blythe Young, to discuss their interest in forming a LifeWise chapter within the community. Decl. Young ¶6.  Ms. Young and the District neither supported nor opposed their plans. In January 2025, the LifeWise chapter was created, and they began offering off-campus religious instruction during the school day to students in the District, and specifically targeted students at Emerson Elementary. *Id*.; Dkt. # 5 at p. 7-8.

LifeWise is not affiliated with or sponsored by the District,  nor does the District partner with LifeWise.  Decl. Mack ¶9.  Accordingly, when receiving any request made by LifeWise as

DEFENDANT'S OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
CASE NO. 2:25-CV-02604-LK - 4

**PATTERSON BUCHANAN**
**FOBES & LEITCH, INC., P.S.**

1000 Second Ave., 30th Floor, Seattle, WA  98104
Tel. 206.462.6700  Fax 206.462.6701

an organization, the District reviews the request in accordance with the applicable District policies and procedures and responds accordingly. The process is the same for all requests made by a community organization, whether secular or religious in nature. For communications related to a student receiving religious instruction from LifeWise, the District communicates directly with the parent or guardian of student(s) not with LifeWise, just as they would with any other educational communication related to a student. Decl. Young ¶8.

## C.    Community Resource Fair And Displaying of Flyers.

Since the formation of the LifeWise chapter in the Everett, Washington community, LifeWise has requested to display flyers in the lobby at Emerson Elementary, distribute flyers electronically through PeachJar - software used by the District for electronic distribution – and, on one occasion, sought to participate in the Community Resource Fair, a District-sponsored event. Decl. Young ¶¶9-10; Decl. Mack ¶¶10-11. The District has processed these requests, consistent with the processes used to review requests made by any other community group, and consistent with District policies and procedures. *Id*. This includes District Procedure 2340P, which states, in relevant parts:

"C. School resources, including facilities, real property, bulletin boards and communication systems may be used by religious groups or for religious purposes only in accordance with procedures developed by the superintendent or designee. Such use must be outside of school hours or when allowable use will not interfere with the school program in compliance with Board Policy – Non-School Use of Buildings, Grounds Equipment.

…

G. Material and/or announcements promoting religion may not be distributed by non-students or on behalf of groups or individuals who are not students."

DEFENDANT'S OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
CASE NO. 2:25-CV-02604-LK - 5

**PATTERSON BUCHANAN**
**FOBES & LEITCH, INC., P.S.**

1000 Second Ave., 30th Floor, Seattle, WA  98104
Tel. 206.462.6700  Fax 206.462.6701

1
2
3
4

The District also allows students to distribute religious literature under the same conditions that other literature may be distributed on the campus provided that such distribution does not intrude on the operation of the school in compliance with Board Policy 3222 – Distribution of Materials. Ex. I, Decl. Mack ¶7.

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21

Additionally, under Procedure 3222P, "[m]aterials may be distributed before or after the school day at points of entry/exit of school buildings" with permission of the school principal, provided that the distribution of materials by students "shall not cause a substantial disruption of school activities or materially interfere with school operations." Ex. J, Decl. Mack ¶7. The District policy provides that "[p]ersons other than students may not distribute materials on school grounds." Ex. I, Decl. Mack ¶7. To date, no District administrator has denied any request made by a student to distribute religious materials conforming to District Policy and Procedure 3222/P. However, consistent with the District policy, religious material and/or announcements may not be distributed by students on behalf of groups, including LifeWise. *Id*. It is true that when LifeWise initially formed, it placed flyers in the lobby at Emerson Elementary. However, they were permitted to do so in error and as soon as the Principal realized that District policy prohibited the display of the flyers given their religious content, the flyers were removed from the lobby. Decl. Young ¶11. The decision to remove the materials was made consistent with District policies and procedures, and similar action would have been taken with respect to any other material that also did not comply District policies. *Id*.

22
23
24
25

Plaintiffs also assert that the District has restricted LifeWise's ability to communicate with the school community, on one occasion, through the use of an electronic platform called PeachJar. Dkt. # 5 at p. 11. The District adheres to the Guidelines for eflyer distribution, which requires the approval of each electronic flyer prior to distribution and provides that each

DEFENDANT'S OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
CASE NO. 2:25-CV-02604-LK - 6

**PATTERSON BUCHANAN**
**FOBES & LEITCH, INC., P.S.**

1000 Second Ave., 30th Floor, Seattle, WA  98104
Tel. 206.462.6700  Fax 206.462.6701

electronic flyer meets the standards and eligibility requirements. Decl. Mack ¶11. LifeWise has never been denied access to PeachJar and they have submitted numerous requests for the distribution of electronic flyers through PeachJar. Ex. M, Decl. Mack ¶¶7, 11. While some requests were denied, several have been approved, and others were approved and distributed after LifeWise complied with requested revisions by the District. *Id*. This review process applies to any group or organization seeking to distribute electronic flyers through PeachJar. *Id.*

On one occasion, LifeWise requested to host a table at the Community Resource Fair, which is an annual District-sponsored event organized by the Family Engagement Team. Decl. Mack ¶10. The District's Family Engagement Team connects vulnerable students and families to community resources throughout the year. Likewise, throughout the year, the Family Engagement Team works with community organizations that provide such services to students and families. *Id*. Each year, the Family Engagement Team invites those community organizations to participate in the Community Resource Fair for the purpose of providing access to resources such as legal, health, mental health, special education services, immunizations, and other social services. *Id.* There is no official process, open to the public, by which an organization may submit a request to host a table at the Community Resource Fair. Instead, the organizations are invited to attend because of their existing relationships with the Family Engagement Team and the services that those organizations provide in alignment with the mission of the Family Engagement Team. *Id.*

LifeWise's request to participate at the Community Resource Fair was sent to the District's communication department after they saw a flyer advertising the event. Decl. Mack ¶11. The request was not made to the Family Engagement Team. Nonetheless, the District's

DEFENDANT'S OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
CASE NO. 2:25-CV-02604-LK - 7

**PATTERSON BUCHANAN
FOBES & LEITCH, INC., P.S.**

1000 Second Ave., 30th Floor, Seattle, WA 98104
Tel. 206.462.6700  Fax 206.462.6701

communication department responded and denied the request pursuant to District Policy and Procedure 2340P.

**D.    Community Response To LifeWise.**

1. <u>Community Members Attending Board Meetings and Contacting the District</u>.

Since the formation of the LifeWise chapter, the District has received several communications from parents expressing concerns and confusion regarding the District's relationship with LifeWise. Ex. L, Decl. Mack, ¶¶7, 12; Decl. Young ¶¶12, 13. Additionally, numerous community members have attended Board meetings to express their individual viewpoints and concerns regarding LifeWise. Ex. L, Decl. Mack ¶7. One Board member, Mr. Adkins, has expressed his individual viewpoints and opinions during meetings. However, he was speaking only for himself and not on behalf of the Board (who speaks for the District), as he is not authorized to speak on behalf of the Board. Thus, his comments during Board meetings do not represent the opinion or position of the District as a whole. Ex. C, Decl. Mack ¶7.

The District and Ms Young have responded to individuals expressing their opinions just as they would any community member sharing concerns with the District, including meeting or scheduling times to speak individually and responding directly to emails. Ex. L, Decl. Mack ¶7; Decl. Young ¶¶12, 13. Additionally, due to the high volume of communications to the District expressing confusion regarding the District's relationship with LifeWise, the District created a webpage with the Student Release Guidelines. Decl. Mack ¶13.

2. <u>Disruption To School Operations</u>.

Sometime during Spring of 2025, shortly after LifeWise began offering off campus religious instruction to students, the Emerson Elementary Principal began receiving concerns about students returning to school with LifeWise branded items, candy, and literature, and attempting to provide those items to other students during the school day, including in the classroom. Decl. Young ¶¶12-14. This resulted in complaints from parents that LifeWise was

DEFENDANT'S OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
CASE NO. 2:25-CV-02604-LK - 8

**PATTERSON BUCHANAN
FOBES & LEITCH, INC., P.S.**

1000 Second Ave., 30th Floor, Seattle, WA  98104
Tel. 206.462.6700  Fax 206.462.6701

improperly using students to proselytize to other students in violation of District policy and procedure. *Id.;* Ex. L, Decl. Mack, ¶7. Teachers also indicated that such behavior was causing substantial disruption in the classroom. Decl. Young ¶13. As a result, the school requested that students returning from LifeWise keep those items in a sealed envelope in their backpacks during the school day. Decl. Young ¶13. Notably, the school would have responded similarly to any students distributing materials in the classroom from any organization – secular or religious - or to students with any items that may cause disruption in the classroom, such as toys from home. Decl. Young ¶14. There have been other instances when the school has sent reminders to families that students are not to bring items, such as toys or anything that may disrupt the operations of the school. *Id.*

**E.    The District Allows For Students To Fully Participate In LifeWise Without Targeted Hostility or Burden.**

    **1.    The District Allows For The Release Of Students To Participate In LifeWise During Non-Instructional Time**.

    Since LifeWise began offering religious instruction to students, Emerson Elementary School has consistently accepted requests from parents to release their students to participate in religious instruction during the school day, and has not denied any such requests. Decl. Young ¶15. To the extent required by law, the school will continue to allow the release of students for that reason as long as such release also complies with the District's policies and procedures. *Id.*

LifeWise provides off campus instruction two days per week during non-instructional time – a forty-minute lunch and recess break. Decl. Young ¶16. The school releases the students to a specific adult authorized by the parent or guardian. *Id.* LifeWise provides bus transportation to their off campus location and returns them to the school when instruction is over. *Id.*

    The District requires a parent or guardian seeking to release their student for religious instruction to submit to the school authorization, on a weekly basis, including the date and the name of the adult to whom the student is being released by no later than the morning of the

DEFENDANT'S OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
CASE NO. 2:25-CV-02604-LK - 9

**PATTERSON BUCHANAN
FOBES & LEITCH, INC., P.S.**

1000 Second Ave., 30th Floor, Seattle, WA  98104
Tel. 206.462.6700  Fax 206.462.6701

scheduled release of the student. Decl. Blyth ¶17. This process is required for all parents and guardians any time a student is leaving school during the school day, for any reason, with an adult other than the parent or guardian. *Id*. This is for the safety of the students over whom the school acts *in loco parentis* while they are at school. *Id*.

While the District initially permitted parents to submit a single permission slip authorizing a student to be released to named adults for the entire semester, it was later determined that it must be done on a weekly basis. Decl. Young ¶19. This change more closely aligns with the District's standard process for the release of a student during the school day. *Id*. It also provides the school with the most current and accurate information as to the specific dates and to whom the student will be released to given that circumstances may unexpectedly change (e.g. illness, travel, etc). The process simply requires that the parent or guardian submit permission, in paper or by email, or by calling the school and leaving a message that is then transcribed as written documentation for the school. Decl. Young ¶20. The school has on at least one occasion assisted a parent without access to email as to how to call and leave a message. *Id*.

Notably, unlike some states, Washington does not have a release time for religious instruction ("RTRI") statute. Instead, the District allows such release time in compliance with federal and state laws. Ex.F-H, Decl. Mack ¶7 The District does have a Procedure for the release of a student for religious-related activities or instruction, which includes the right of a parent or guardian to seek the release of students during part of the school day to participate in religious instruction that occurs off school property and does not disrupt their regular classroom instructional time. Ex.H, Decl. Mack ¶7. Emerson Elementary's requirement for a weekly permission slip from parents or guardians authorizing their student to be released during the school day also aligns with District Procedure 2340P.

Since the implementation of requiring weekly permission slips, neither the school nor the District has received any communication directly from parents or guardians expressing

DEFENDANT'S OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
CASE NO. 2:25-CV-02604-LK - 10

**PATTERSON BUCHANAN**
**FOBES & LEITCH, INC., P.S.**

1000 Second Ave., 30th Floor, Seattle, WA  98104
Tel. 206.462.6700  Fax 206.462.6701

concern or indicating that it has prevented their child from participating in religious instruction at LifeWise.  The only concerns have been raised by Ms. Sweeny and another parent, Darcie Hammer, indicating their dissatisfaction with the change in the process.  Decl. Young ¶20.

### a.  No Other Comparable Clubs or Organizations.

Plaintiffs suggest that the District has only placed the weekly permission slip requirement on parents and guardians of students attending LifeWise, and that it treats LifeWise differently than other secular organizations, such as the Boys and Girls Club or a stem club.  However, those other groups are not comparable. They do not offer off campus programing to students during the school day, nor have families ever requested the release of their students to do so. Decl. Young ¶18.  While the school does not require a weekly permission slip to participate in any other organization, that is because there are no other groups offering ongoing, weekly programming to students during the school day. *Id.* Further, there are different legal considerations when parents seek to release students for religious instruction as compared to other reasons. Decl. Young ¶19.

### 2.  The Board Has Not Taken Any Formal Action Targeted or Directed at LifeWise.

Plaintiffs assert that the Board implemented "new guidelines" governing how students are released from school to attend LifeWise when the schools began requiring a weekly permission slip from a parent or guardian. Dkt. # 12 at p. 12.  This is not accurate and misrepresents the District's actions.  To date, there has been no formal action taken by the Board to change or revise District Policy and Procedure 2340/P, or any other District policies pertaining to release time for religious instruction. Mack Decl. ¶13.  While the District initially allowed parents to submit a single permission slip for the entire semester, the decision to subsequently require permission on a weekly basis was not made by the Board, nor is it a decision the Board would be asked to make. Ex. B, Mack Decl. ¶¶7, 13; Young Decl. ¶19.  The function of the Board is to create District-wide policies, not to engage in the day to day operations of individual schools.

DEFENDANT'S OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
CASE NO. 2:25-CV-02604-LK - 11

**PATTERSON BUCHANAN**
**FOBES & LEITCH, INC., P.S.**

1000 Second Ave., 30th Floor, Seattle, WA  98104
Tel. 206.462.6700  Fax 206.462.6701

Release time for religious instruction is new to the District, and only started in January 2025. Young Decl. ¶19.  The District has never navigated similar requests made by parents, so school officials have made decisions as  the situation evolves consistent with District policy and procedures and federal and state laws.  *Id.*  After permitting a permission slip for a more expansive period of time, the District recognized safety concerns, and changed the requirement to address those concerns. *Id.*.

**3.  Possession of Religious Materials by Students.**

Plaintiffs have suggested that the District has taken steps to create new guidelines requiring that any religious materials LifeWise distributes during religious instruction remain hidden and sealed for the remainder of the day, which in turn prohibits LifeWise students from utilizing their LifeWise Bibles for lessons, even when students would otherwise be permitted to read or study quietly.  Dkt. # 5 at p. 13. This is inaccurate and misrepresents the school's actions. Neither the Board nor the District have revised any policies or procedures related to the ability to read religious material in the classroom, nor has the Board implemented new policies in this regard.  The District does not prohibit students from distributing religious materials at school so long as they do so in compliance with the existing, unrevised, District policies and procedures. Pursuant to Procedure 2340P, section G, "A student may distribute religious literature under the same conditions that other literature may be distributed on the campus provided that such distribution does not intrude on the operation of the school in compliance with Board Policy 3222 – Distribution of Materials." Procedure 2340P.  While the District has responded by requesting that students returning from LifeWise keep materials in an envelope in their backpacks, after students returning from LifeWise were causing disruption in the classroom, the District has taken no action that would prevent a student from reading LifeWise materials during non-instructional time. Young Decl. ¶14. Moreover, the District allows for such reading.

DEFENDANT'S OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
CASE NO. 2:25-CV-02604-LK - 12

**PATTERSON BUCHANAN
FOBES & LEITCH, INC., P.S.**

1000 Second Ave., 30th Floor, Seattle, WA  98104
Tel. 206.462.6700  Fax 206.462.6701

### III.    LEGAL STANDARD

Injunctive relief is an extraordinary remedy that may only be awarded upon a clear showing that it is warranted. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). An injunction is a 'transcendent or extraordinary remedy,' which should not be lightly indulged in, and used sparingly and only in a clear and plain case. *Kucera v. State, Dep't of Transp.*, 140 Wn. 2d 200, 209, 995 P.2d 63, 68 (2000) (internal citations omitted). Plaintiffs' case is not so clear and plain as to justify the extraordinary relief of a preliminary injunction.

To obtain a preliminary injunction, the Plaintiffs must establish: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in favor of the plaintiff; (4) that an injunction is in the public interest. *Winter*, 555 U.S. at 20. Plaintiffs' failure to satisfy any one of these factors requires denial of the motion. *Alliance for the Wild Rockies v. Cottell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011).

Further, when the requested injunctive relief seeks to enjoin governmental action, the balance of equities and public interest factors merge, and courts must apply the preliminary injunction with caution. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). In such cases, the public interest weighs heavily against judicial interference absent a clear and compelling sowing of entitlement to relief.

### IV.    ARGUMENT

The District has not taken any steps to burden, express hostility or change policy to target LifeWise and the parents whose children attend. Plaintiffs assert that the District has denied LifeWise equal treatment by (1) restricting equal access to its public forums; (2) subjecting LifeWise and LifeWise parents to an "onerous permission slip policy"; and (3) requiring LifeWise materials be sealed in an envelope and hidden away in a backpack. Many of LifeWise's contentions are simply untrue, and where they are true, the District's actions were reasonable, viewpoint-neutral, and not violative of the Plaintiffs' constitutional rights.

DEFENDANT'S OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
CASE NO. 2:25-CV-02604-LK - 13

**PATTERSON BUCHANAN
FOBES & LEITCH, INC., P.S.**

1000 Second Ave., 30th Floor, Seattle, WA  98104
Tel. 206.462.6700  Fax 206.462.6701

**A.    Plaintiffs Are Unlikely To Succeed On The Merits Of Their Claims That the District Violated the First Amendment.**

**1.    No Constitutional Right to Unrestricted Access to Government Property.**

Public schools are not public forums open to free expression, *see Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 267 (1988), and the First Amendment does not require equivalent access to all parts of a school building in which some form of communicative activity occurs, *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 44 (1983). "The existence of a right of access to public property and the standard by which limitations upon such a right must be evaluated differ depending on the character of the property at issue." *Id.* "Public property which is not by tradition or designation a forum for public communication is governed by different standards," and the government "may reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Id.* at 46.

School facilities may be deemed to be limited public forums if they have been opened for indiscriminate use by the general public or some segment of the public. *Hazelwood Sch. Dist.* at 267. If the facilities have instead been reserved for other intended purposes, communicative or otherwise, then no public forum has been created, and school officials may impose reasonable restrictions on the speech of members of the school community. *Id.* In a nonpublic or limited public forum, restrictions on speech are permissible if they are viewpoint neutral and reasonable in light of the purpose served by the forum. *See Preminger v. Peake*, 552 F.3d 757, 765 (9th Cir. 2008); *DiLoreto v. Downey Unified Sch. Dist. Bd. of Educ.*, 196 F.3d 958, 965 (9th Cir. 1999).

The District's exclusion of LifeWise from participating in the nonpublic forums at issue, to the extent LifeWise was excluded, did not violate anybody's right to free expression, as such exclusion was based on neutral and reasonable policies.

DEFENDANT'S OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
CASE NO. 2:25-CV-02604-LK - 14

**PATTERSON BUCHANAN
FOBES & LEITCH, INC., P.S.**

1000 Second Ave., 30th Floor, Seattle, WA 98104
Tel. 206.462.6700  Fax 206.462.6701

### a. The District Policy Is Reasonable And Viewpoint Neutral.

Courts evaluate the reasonableness of a restriction on expressive conduct in a nonpublic forum in light of the purpose of the forum and all the surrounding circumstances. *See Preminger*, 552 F.3d at 765. Heightened scrutiny does not apply in a nonpublic forum, and the government need not adopt the most reasonable limitation. *See Swarner v. United States*, 937 F.2d 1478, 1482 (9th Cir. 1991). "The existence of alternative communication channels, the avoidance of disruptions and administrative manageability are all relevant to a restriction's reasonableness." *Id.* Further, "the determination of what manner of speech in the classroom or in school assembly is inappropriate properly rests with the school board, rather than with the federal courts." *See Hazelwood Sch. Dist.*, 484 U.S. at 267 (cleaned up).

### i. Participation In Community Resource Fair.

The Community Resource Fair is a quintessential nonpublic forum. It is sponsored by the District's Family Engagement Team for the purpose of providing access to resources such as legal, health, mental health, special education services, immunizations, and other social services. Decl. Mack ¶10. The District only invites specific organizations providing need-based services to share that information with families and students, which is directly related to the District's educational mission of increasing student performance in its vulnerable populations of students.

LifeWise requested to host a table at the Community Resource Fair, but was denied. *Id.* The District's denial of LifeWise's request to host a table at the Community Resource Fair was not due to its religious viewpoint, but was instead due to the fact that LifeWise's participation in the event was not consistent with the purpose of the event (i.e., providing access to community services). Indeed, LifeWise does not even argue in its motion for a preliminary injunction that their participation in the Community Resource Fair would be consistent with the purposes of the event, and it appears that they would have used the event to advertise their Bible education program, not to provide information about public health or wellbeing services it provides. The District's denial of LifeWise's request, based on school officials' conclusion that its participation

DEFENDANT'S OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
CASE NO. 2:25-CV-02604-LK - 15

**PATTERSON BUCHANAN
FOBES & LEITCH, INC., P.S.**

1000 Second Ave., 30th Floor, Seattle, WA 98104
Tel. 206.462.6700  Fax 206.462.6701

in the community fair would be inconsistent with the purpose of the event, is perfectly consistent with the community fair's status as a nonpublic forum. *See Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. at 49 ("Implicit in the concept of the nonpublic forum is the right to make distinctions in access on the basis of subject matter and speaker identity.").

The District's decision to restrict LifeWise from participating in the Community Resource Fair was also supported by the District's interest in avoiding the impression that it has endorsed LifeWise's religious program. If the District allowed LifeWise to advertise its Bible education program at a school-sponsored event, it is likely that members of the public would perceive LifeWise's religious programming to bear the imprimatur of the school. The District has an interest in ensuring that the views of individual speakers are not erroneously attributed to the school. *See Hazelwood School Dist.*, 484 U.S. at 271 (educators are entitled to exercise greater control over expressive activities that members of the public might reasonably perceive to bear the imprimatur of the school to ensure that views of speaker are not erroneously attributed to the school). Indeed, schools must retain authority to refuse to sponsor speech that might associate the school with any position other than neutrality on matters of political controversy. *Id.* at 272.

The District's concern on this latter point is not hypothetical. To date, parents and other members of the public have mistakenly believed that the District has partnered with LifeWise, which has led to numerous complaints alleging that the District has impermissibly permitted LifeWise to provide its religious programming through its schools. Ex. L, Decl. Mack ¶7; Decl. Young ¶¶12-13.  Allowing LifeWise to advertise its Bible education courses through a school sponsored Community Resource Fair would only aggravate such concerns, and would unnecessarily entangle the District with political disputes over allowing Bible education in public schools. *Cf. Preminger*, 552 F.3d at 767 ("[I]n a nonpublic forum, the government may restrict expressive activity so as to avoid the perception of favoring one political group over another.").

**PATTERSON BUCHANAN
FOBES & LEITCH, INC., P.S.**

1000 Second Ave., 30th Floor, Seattle, WA  98104
Tel. 206.462.6700  Fax 206.462.6701

LifeWise relies on several cases, many of which are inapposite. For instance, in *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98 (2001), the Supreme Court held that a school violated a Christian organization's free speech rights when it excluded it from meeting after hours at the school pursuant to a "community use policy" that allowed organizations to use school facilities for "social, civic and recreational meetings and entertainment events, and other uses pertaining to the welfare of the community." The Court found that the school's prohibition constituted impermissible viewpoint discrimination because the religious group's proposed use of the school's facilities was consistent with the school's "community use policy," just from a religious viewpoint. *Id.* at 107-112. Likewise, in *Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384 (1993), the Court similarly held that a school violated the First Amendment when it denied a church access to school premises to exhibit a religiously oriented film, when such exhibition was otherwise consistent with the school's policy allowing for use of school facilities for "social, civic, and recreational purposes."

The facts of the instant case are distinguishable. The District does not allow organizations to participate in the Community Resource Fair for broad "social, civic, and recreational purposes." To the contrary, the relatively narrow purpose of the event is to provide access to resources for students and their families. LifeWise's participation in the Community Resource Fair is not consistent with these purposes. LifeWise apparently wishes to participate in the event to advertise its Bible education program, as it does not indicate that it provides any additional services other than religious education and/or training.

### ii.  Flyers in the Lobby of Emerson Elementary School.

The District has similar interests in regulating the flyers that LifeWise wishes to circulate on school grounds. Much like the Community Resource Fair, school grounds are nonpublic forums for purposes of distributing flyers, as the school screens the flyers' content before it allows them to be distributed. *See Hills v. Scottsdale Unified Sch. Dist. No. 48*, 329 F.3d 1044,

DEFENDANT'S OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
CASE NO. 2:25-CV-02604-LK - 17

**PATTERSON BUCHANAN
FOBES & LEITCH, INC., P.S.**

1000 Second Ave., 30th Floor, Seattle, WA  98104
Tel. 206.462.6700  Fax 206.462.6701

1046 (9th Cir. 2003) (school district permitting organizations to distribute literature through its schools did not create a public forum, as district always restricted availability of the program, prohibited materials that were of a commercial, political, or religious nature, and screened submissions for suitability and frequently rejected flyers for various reasons).

Further, the District has not regulated LifeWise's flyers due to the LifeWise's viewpoint, but rather the religious content of the flyers. *See DiLoreto*, 196 F.3d at 969 ("Permissible content-based restrictions exclude speech based on topic, such as politics or religion, regardless of the particular stand the speaker takes on the topic."). Indeed, as LifeWise concedes, the school has policies regulating the content of the flyers at issue. Much like participation in the Community Resource Fair, the District has an interest in regulating distribution of flyers so that such distribution is consistent with pedagogical concerns, including avoiding the appearance of endorsing particular viewpoints. *See id.* at 966-68. The District also has an interest in avoiding disruption and potential controversy that might arise from allowing flyers that proselytize to elementary school students. *See id.* (holding that District's concerns regarding disruption and potential controversy were legitimate reasons for restricting content of advertisements on school facilities; District reasonably could have believed that controversy and distraction created by religious messages raised the potential for disruption of classes and school-sponsored events); *see also Hills*, 329 F.3d at 1052 (while District cannot refuse to distribute literature advertising a program with underlying religious content where it distributes similar secular literature, it can refuse to distribute literature that itself contains proselytizing language).

### iii. Electronic Distribution Of Flyers.

LifeWise's claim involving the PeachJar distribution platform is unlikely to succeed on the merits for the simple reason that LifeWise was never denied access to the platform. Decl. Mack, ¶11. School officials did request LifeWise revise some of its proposed flyers, but

DEFENDANT'S OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
CASE NO. 2:25-CV-02604-LK - 18

**PATTERSON BUCHANAN
FOBES & LEITCH, INC., P.S.**

1000 Second Ave., 30th Floor, Seattle, WA  98104
Tel. 206.462.6700  Fax 206.462.6701

LifeWise complied with these requests, and the school then distributed the flyers accordingly. *Id.*

**B.    Plaintiffs Are Unlikely To Succeed On The Merits of Their Free Exercise Claims.**

**1.    The District's Permission Slip Requirement Does Not Infringe Plaintiffs' Free Exercise Rights.**

The First Amendment provides that "Congress shall make no law … prohibiting the free exercise" of religion. *Mahmoud v. Taylor*, 606 U.S. 522, 545 (2025).  The restriction generally applies equally to state and local governments as well. *Id.*   As such, the Supreme Court acknowledged that "[g]overnment schools, like all government institutions may not place unconstitutional burdens on religious exercise." *Id.*

While the Free Exercise Clause prohibits government action prohibiting the free exercise of religion, "the right of free exercise does not relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).'" *Doe v. San Diego Unified School District*, 19 F.4th 1173, 1177 (9th Cir. 2021) (quoting *Emp. Div., Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872, 879 (1990) (citations omitted)).  A restriction that "is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice." *Id.* (quoting *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531–32 (1993)). A regulation that fails to "satisfy these requirements must be justified by a compelling governmental interest and must be narrowly tailored to advance that interest." *Id.*

**a.    The Permission Slip Requirement Is General and Neutral and Does Not Constitute an Unconstitutional Burden So To Infringe on the Plaintiffs' Free Exercise Rights.**

In *Mahmoud*, the Supreme Court looked to a mater where the parents and teachers of public elementary school students brought action against a public-school board alleging the board's refusal to provide notice when "LGBTQ+ inclusive" storybooks would be taught and an

DEFENDANT'S OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
CASE NO. 2:25-CV-02604-LK - 19

**PATTERSON BUCHANAN
FOBES & LEITCH, INC., P.S.**

1000 Second Ave., 30th Floor, Seattle, WA  98104
Tel. 206.462.6700  Fax 206.462.6701

1
2
3
4
5

opportunity to opt out of such instruction. *Mahmoud*, 606 U.S. at 522. The parents claimed this infringed on their First Amendment right to the free exercise of their religion. *Id*. The Court held that the parents were entitled to a preliminary injunction, in part, because the parents were likely to succeed on their claim that the Board's policies unconstitutionally burdened their religious exercise. *Id*. at 523.

6
7
8
9
10
11
12
13
14

The Court further held that the Board's introduction of such storybooks, "combined with its decision to withhold notice to parents and to forbid opt outs, substantially interfere[d] with the religious development of petitioners' children and imposes the kind of burden on religious exercise" that the Court previously found unacceptable, particularly as the content of the books were "unmistakably normative." *Id*. at 524. The Board also "specifically encouraged teachers to reinforce this viewpoint and to reprimand any children who disagree." *Id*. at 525. As such, this goes beyond mere "exposure." *Id*. With this, as the Court found the policy burdens the parents' right to the free exercise of religion, it then looked to whether the burden was constitutionally permitted. *Id*.

15
16
17
18
19
20
21
22
23
24
25

In its analysis, the Court acknowledged that the "government is generally free to place incidental burdens on religious exercise so long as it does so pursuant to a neutral policy that is generally applicable." *Id*. at 526. Yet if the law imposes a burden as in the case of the Board policy, strict scrutiny is appropriate regardless of whether the law is neutral or generally applicable. *Id*. To survive the test of strict scrutiny "a government must demonstrate that its policy "advances 'interests of the highest order' and is narrowly tailored to achieve those interests." *Id*. (quoting *Fulton v. Philadelphia*, 593 U.S. 522, 541 (quoting *Church of Lukumi Babalu Aye*, 508 U.S. at 546)). In response to the Board arguing that its curriculum and no-opt-out policy served a compelling interest in maintaining a school environment that is safe and conductive to learning for all students, the Court found the Board's conduct in continuing to "permit opt outs in a variety of other circumstances undermine[d] its assertion that its no-opt-out

DEFENDANT'S OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
CASE NO. 2:25-CV-02604-LK - 20

**PATTERSON BUCHANAN**
**FOBES & LEITCH, INC., P.S.**

1000 Second Ave., 30th Floor, Seattle, WA  98104
Tel. 206.462.6700  Fax 206.462.6701

policy [was] necessary to serve that interest." *Id*. Despite this, the Court acknowledged that as a general matter schools have a "compelling interest in having an undisrupted school session conducive to the students' learning." *Id*.

The Court concluded that without the injunction, the parents would continue to suffer the unconstitutional burden on their religious exercise, and that this burden "unquestionably constitute[d] irreparable injury." *Id*. at 527. The Board was ordered to notify the petitioners in advance whenever one of the books in question or any other similar book was to be used in any way and to allow them to have their children excused from that instruction. *Id*.

First, in this case, unlike that of *Mahmoud*, the permission slip requirement is generally applicable to any student leaving off-campus to another location and being taken by an adult that is not a guardian or parent or appointed by the said guardian or parent. Circumstances include medical appointments, field trips, and etc. Further, the District has never declined any parent's request to release their students to participate in religious instruction during the school day.  Decl. Young ¶15.. Second, in *Mahmoud*, there are two prongs which are distinguishable from our case. Unlike the "unmistakably normative" storybooks at issue in *Mahmoud*, the permission slips at issue here are content-neutral, and the permission slip policy was put in place to ensure the safety of students when picked up, taken to an off-campus location, and returned to school by someone other than their parent or guardian.  Second, unlike in *Mahmoud*, which lacked an "opt-out" alternative, the District is allowing students to "opt-in" to participating in LifeWise's off-campus programming.  The District's permission slip requirement is merely a procedure like that for any other off-campus activity which is narrowly tailored in the form of a simple written authorization in order to ensure the safety of the students once they leave the campus for an off-campus activity.

The District's procedure to require record-keeping to ensure the safety of students when engaging in mid-day off-campus activities, whether religious or not, is content-neutral and does not infringe on the Plaintiffs' rights to freely exercise their religion. Even if it did tangentially

DEFENDANT'S OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
CASE NO. 2:25-CV-02604-LK - 21

**PATTERSON BUCHANAN
FOBES & LEITCH, INC., P.S.**

1000 Second Ave., 30th Floor, Seattle, WA  98104
Tel. 206.462.6700  Fax 206.462.6701

burden their free exercise rights, such a burden would not be unconstitutional as the permission slip procedure is narrowly tailored given the circumstances of students being taken by an adult that is not their legal guardian or parent, to an off-campus location for a period of time given the compelling government interest of the safety of students in school.

Further, the permission slips requirement does not involve any hostility from the District towards the Plaintiffs. It is a routine procedure taken by the District in most, if not all. instances of an adult that is not the legal guardian and/or parent of the student taking them to an off-campus location for a period of time. Decl. Young ¶17. There is no intent to infringe on the Plaintiffs' right to the free exercise of their religion. To ensure the right of students and parents to feel safe in their school, the District's permission-slip procedure is necessary and does not infringe on the Plaintiffs' religious rights.

As such, the Plaintiffs' Motion for Preliminary Injunction should not be granted as the requirement is neutral, not content based, generally applicable, and is narrowly tailored to achieve a compelling government interest.

**b. If Not Enacted, the Permission Slip and Envelop Requirements Would Otherwise Cause The District To Be In Violation Of The First Amendment Establishment Clause.**

The Supreme Court acknowledges that there is a compelling interest in avoiding an Establishment Clase violation that may therefore justify content-based discrimination. *Good News Club v. Milford Central School*, 533 U.S. 98, 112, 121 (2001). The Ninth Circuit further acknowledges the Establishment Clause may be a defense to a First Amendment argument. *Culbertson v. Oakridge School Dist. No. 76*, 258 F.3d 1061 (9th Cir. 2001). The Ninth Circuit also acknowledges that a school building is not a traditional public forum. *Id*. at 1064. Even if considered as the function of "community centers," in the capacity of being available for nonprofit community activities, the activities are established as community education and

DEFENDANT'S OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
CASE NO. 2:25-CV-02604-LK - 22

**PATTERSON BUCHANAN
FOBES & LEITCH, INC., P.S.**

1000 Second Ave., 30th Floor, Seattle, WA  98104
Tel. 206.462.6700  Fax 206.462.6701

recreation. *Id*. By creating a forum of such a form, a District would then be unable to discriminate within it on the basis of viewpoint. *Id*.

In *Culbertson,* a religious group brought action against a school district in order to have access to the school building after school hours. *Id*. The plaintiffs moved for partial summary judgment and for a permanent injunction. *Id*. The permanent injunction ordered the District to "provide plaintiffs the same access to school facilities as is afforded to other non-school community groups without regard to the religious content of their proposed activities or their religious character." *Id*. The injunction also directed students at the school to be permitted to distribute club brochures and parental permission slips to other students at school as subject to reasonable regulation in order to prevent disruption of the educational process. *Id*. The permission slips would also be treated "in the same manner as the materials of other non-school community groups." *Id*.

Regarding the permission slips in their relation to the Establishment Clause defense, the Ninth Circuit acknowledged that the injunction required the District to treat the permission slips in the same way it disseminates the materials of other non-school groups. *Id*. at 1065. For establishment concerns, the Ninth Circuit established that parental permission is an important insulation. *Id*. But for teachers to have to distribute these slips, goes beyond opening access to a limited public forum. *Id*. As such, the line between "benevolent neutrality and endorsement is fine." *Id*. But the Ninth Circuit found it to be overstepped in this case and ordered the plaintiffs to modify the injunction so as to eliminate the requirement. *Id*.

Here, in this case, the Establishment Clause defense would be better suited to apply to our circumstances over those in *Culbertson*. If the permission slip procedure and the envelope procedures used by the District currently are ceased, it will lead to the authority of the teachers being placed behind that of Lifewise, as was the case in *Culbertson*. So to curb the concern of the District being seen as an agent of Lifewise by allowing for brochures and candy and QR

DEFENDANT'S OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
CASE NO. 2:25-CV-02604-LK - 23

**PATTERSON BUCHANAN
FOBES & LEITCH, INC., P.S.**

1000 Second Ave., 30th Floor, Seattle, WA  98104
Tel. 206.462.6700  Fax 206.462.6701

codes to be disseminated, the permission slip and envelope procedures are necessary. This is particularly true, where, as here, there is no hostility, and the concern for the Establishment Clause is the main reason for instituting such procedures.

As such, the Plaintiffs' Motion for Preliminary Injunction calling for the removal of these procedures would place the District in a readily apparent position of violating the Establishment Clause and should be denied.

### 2. The District's Policies And Requirements Do Not Infringe On Ms. Sweeny's Free Exercise Rights to Control The Religious Education Of Her Children.

#### a. The District's Requirements Are Narrowly Tailored To Achieve A Legitimate Educational Interest.

By drawing on American tradition, the Supreme Court has long recognized the right to "teach religion in the confines of one's home" extends to "the choices that parents wish to make for their children outside the home." *Mahmoud*, 606 U.S. at 547. An example would be a "parent's decision to send his or her child to a private religious school instead of a public school." *Id*. The Court has further acknowledged that due to "financial and other constraints, however, many parents 'have no choice but to send their children to a public school.'" *Id*. With this, the right of parents to direct the religious upbringing of their children "would be an empty promise if it did not follow those children into the public-school classroom." *Id*. As such, the Court has "recognized limits on the government's ability to interfere with a student's religious upbringing in a public-school setting." *Id*.

Here, in this case, unlike in *Mahmoud*, the requirements of the permission slip and the envelope are not barriers to Ms. Sweeny's free exercise rights to control the religious education of her children. Rather, they are guidelines placed by the District to curb the significant disruptions that have occurred in the classroom from the candy and flyers brought back from LifeWise that were distributed by students during class. Decl. Young ¶14 As noted by the Court in *Mahmoud*, it recognizes as a general matter that schools of have a "compelling interest in

DEFENDANT'S OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
CASE NO. 2:25-CV-02604-LK - 24

**PATTERSON BUCHANAN
FOBES & LEITCH, INC., P.S.**

1000 Second Ave., 30th Floor, Seattle, WA  98104
Tel. 206.462.6700  Fax 206.462.6701

having an undisrupted school session conducive to the students' learning." *Id.* at 566 (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 119 (1972)).

Unlike the Board allowing for opt outs in other circumstances in *Mahmoud*, here, the District's requirements are narrowly tailored around the specific items that led to the significant disruptions, not on the basis of religion. As the District provides requirements which are narrowly tailored to the compelling interest of undisrupted school sessions that are conducive to students' learning, the District's requirements do not infringe on Ms. Sweeny's free exercise rights. As such, the Plaintiffs' Motion for Preliminary Injunction should be denied.

**C.    Plaintiffs Fail To Establish Irreparable Harm.**

It is unnecessary for the Court to consider the remaining factors because Plaintiffs have not sufficiently established that they are likely to succeed on the merit of their claims.

However, Plaintiffs have also not shown that they will suffer irreparable harm absent an injunction. The District has no knowledge, and the Plaintiffs have provided no evidence, of any students unable to attend LifeWise or fully participate in the program. While Ms. Sweeny presents speculative harm that her child is unable to read the Bible or religious material during breaks, there is no District policy that prevents her child from doing so. Nor is there any evidence that the District has instructed her not to do so. Moreover, there has been no actual evidence of any parent or guardian of students attending LifeWise being harmed by the weekly permission slip requirement, or any of the other actions LifeWise complains about. The District has used a process that is not onerous, and on the one occasion when a parent indicated that they did not have access to email, the District assisted the parent with an alternative method of providing the authorization by phone.

Plaintiffs have also suggested harm caused by District policies barring them from engaging as other community groups do, but do so by mischaracterizing the facts. While

DEFENDANT'S OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
CASE NO. 2:25-CV-02604-LK - 25

**PATTERSON BUCHANAN
FOBES & LEITCH, INC., P.S.**

1000 Second Ave., 30th Floor, Seattle, WA 98104
Tel. 206.462.6700  Fax 206.462.6701

LifeWise may disagree with the existing District policies and the impact it has on them, that does not sufficiently demonstrate irreparable harm.

**D.    The Requested Injunction Is Contrary To The Public Interest.**

Because injunctive relief is equitable in nature, the criteria establishing injunctive relief should also include balancing the "relative interests of the parties and, if appropriate, the interests of the public." *Chan v. City of Seattle*, 164 Wn. App. 549, 567, 265 P.3d 169, 178 (2011) (*citing Tyler Pipe*, 96 Wn.2d at 792, 638 P.2d 1213).  Granting Plaintiffs' request for a preliminary injunction is against the public interest.  Plaintiffs' requested injunction is unnecessary because the District is already treating Plaintiffs the same, and as well as secular groups.  The Plaintiffs' requested injunctive relief would instead require that the District deviate from its policies and procedures, and apply different standards unique to LifeWise.  This would negatively impact the day-to-day operations of the school, place additional administrative burdens on staff, and create confusion amongst students and families.  It would also potentially negatively impact the educational services provided to other students, and undermines the public interest in local control of schools.

Additionally, it is not in the public interest to enter an injunction that has the capacity to expose others to risk of harm.  The requested injunctions have the potential of negatively impacting the educational services provided to other students.  Moreover, overextending staff with additional administrative burdens is likely to negatively impact the services they provide to students and families and increase the likelihood of more mistakes that could impact the safety and wellbeing of themselves and the students.  The District is neither willing nor able to assume these additional risks.

## V.    CONCLUSION

The Court should decline to issue a preliminary injunction and deny Plaintiffs' Motion

DEFENDANT'S OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
CASE NO. 2:25-CV-02604-LK - 26

**PATTERSON BUCHANAN**
**FOBES & LEITCH, INC., P.S.**

1000 Second Ave., 30th Floor, Seattle, WA  98104
Tel. 206.462.6700  Fax 206.462.6701

for Preliminary Injunction.

DATED this 8th day of January, 2026.

PATTERSON BUCHANAN
FOBES & LEITCH, INC., P.S.


By: _s/Charles P.E. Leitch_
     Charles P.E. Leitch, WSBA 25443
     Of Attorneys for Defendants
     1000 Second Ave., 30th Floor
     Seattle, WA  98104
     cpl@pattersonbuchanan.com


## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this brief contains 8,304 words, exclusive of portions not counted under LCR 7(e)(6), in compliance with the Local Civil Rules.


_s/Charles P.E. Leitch_
Charles P.E. Leitch

## CERTIFICATE OF SERVICE

I hereby certify that on January 8, 2026, I electronically filed the foregoing, including any attachments, with the Clerk of the Court using the CM/ECF System, which in turn automatically generated a Notice of Electronic Filing (NEF) to the following:

| ATTORNEY NAME & ADDRESS | METHOD OF DELIVERY |
|---|---|
| Caleb T. Mathena, WSBA 57001<br>Bryan Cave Leighton Paisner LLP<br>999 Third Ave., Suite 4400<br>Seattle, WA 98104<br>Caleb.mathena@bclplaw.com | ■ ECF notification |
| Barbara Smith Tyson (application pro hac vice forthcoming)<br>Seth M. Reid (application pro hac vice forthcoming)<br>Kolten C. Ellis (application pro hac vice forthcoming)<br>Bryan Cave Leighton Paisner LLP 211 N. Broadway, Suite 3600<br>St. Louis, MO 63102<br>Phone: (314) 259-0000<br>barbara.smith@bclplaw.com<br>seth.reid@bclplaw.com<br>kolten.ellis@bclplaw.com | ■ ECF notification |
| Sarah S. Mack<br>Pacifica Law Group LLP<br>401 Union Street, Suite 1600<br>Seattle, WA 98101<br>Sarah.Mack@PacificaLawGroup.com | ■ ECF notification |

I certify under penalty of perjury that the foregoing is true and correct.

DATED this 8th day of January, 2026, at Seattle, Washington.

*s/Jennifer R. Friesen*
Jennifer R. Friesen
Legal Assistant

DEFENDANT'S OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
CASE NO. 2:25-CV-02604-LK - 28

PATTERSON BUCHANAN
FOBES & LEITCH, INC., P.S.

1000 Second Ave., 30th Floor, Seattle, WA  98104
Tel. 206.462.6700  Fax 206.462.6701