1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

8    LIFEWISE, INC.; and SARAH SWEENY,

9        Plaintiffs,

10   v.                                         No. 2:25-CV-02604-LK

11
     EVERETT PUBLIC SCHOOL DISTRICT;
12   and IAN B. SALTZMAN, in his official       **PLAINTIFFS' REPLY IN SUPPORT OF**
     capacity as the Superintendent of Everett  **THEIR MOTION FOR PRELIMINARY**
13   Public Schools,                            **INJUNCTION**

14       Defendants.                            **CONSIDERATION DATE:**
                                                **January 16, 2026**
15
                                                **ORAL ARGUMENT REQUESTED**
16

17

18

19

20

21

22

23

24

25

26

27

PLAINTIFFS' REPLY IN SUPPORT OF THEIR
MOTION FOR PRELIMINARY INJUNCTION
CASE NO. 2:25-CV-02604-LK - 1

BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue Suite 4400
Seattle, Washington  98104
+1 206 623 1700

1

2

3

**TABLE OF CONTENTS**

4   I.      INTRODUCTION ................................................................................................... 3

5   II.     ARGUMENT ......................................................................................................... 3

6           A.      Plaintiffs Are Likely To Succeed On The Merits Of Their Claims. ............................ 3

7                   1.      The District Ignores—And Thereby Admits—That The Board's Hostility,
                            Coupled With Its New Guidelines On Permission Slips, Violates The First
8                           Amendment (Count I). ......................................................................................... 3

9                           a.      The Board "Plan[s] and Direct[s] All Aspects Of the District's Operations,"
                                    And Board Members' Hostile Comments Motivated Their Actions. ............... 4

10                          b.      The Board Took Official Action. ..................................................................... 5

11                  2.      Plaintiffs Are Also Likely To Succeed On Count I Because The District's
                            Permission Slip Guidelines Are Not Neutral Or Generally Applicable And Fail
12                          Strict Scrutiny. .................................................................................................. 6

13                          a.      The Permission Slip Guidelines Treat LifeWise Differently Than Other
                                    Organizations. ................................................................................................ 6
14
                            b.      The Permission Slip Guidelines Fail Strict Scrutiny. ..................................... 7
15
                    3.      The District Violated LifeWise's Free Speech Rights by Denying It Equal Access
16                          to Public Forums Because It Is Religious (Counts II–IV). ................................. 7

17                          a.      Viewpoint Discrimination Must Satisfy Strict Scrutiny In *All* Forums. ........... 8

18                          b.      The District's Asserted (But Unsupported) Interests Cannot Satisfy Strict
                                    Scrutiny. .......................................................................................................... 9
19
                            c.      The Community Resource Fair And Flyer Distribution Systems Are Limited
20                                  Public Forums. .............................................................................................. 11

21                          d.      Even If These Are Not Limited Public Forums, Excluding LifeWise Was
                                    Unreasonable. ............................................................................................... 11
22                  4.      The District Violated Ms. Sweeny's Right To Control The Religious Education
                            Of Her Children (Count IV) .............................................................................. 12
23
            B.      Plaintiffs Are Being Irreparably Harmed. ................................................................... 14
24
            C.      The Equities And The Public Interest Favor Injunctive Relief. ................................. 14
25
    III.    CONCLUSION .................................................................................................... 15
26

27

PLAINTIFFS' REPLY IN SUPPORT OF THEIR
MOTION FOR PRELIMINARY INJUNCTION
CASE NO. 2:25-CV-02604-LK - 2

BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue Suite 4400
Seattle, Washington  98104
+1 206 623 1700

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

## I.    INTRODUCTION

Defendants offer no substantive response to the most troubling First Amendment claim the Motion raises:  The District targeted LifeWise for special enforcement after publicly maligning it. The Board's comments were pointed.  The Board disfavors religion by "prefer[ing] that students stay at school" rather than attend LifeWise.  Mot. Ex. 1, ¶¶ 20, 22.  Board Member Charles Adkins made it "*very extremely abundantly clear* that *yes*, [he] ha[s] animus toward LifeWise" and its beliefs.  *Id.* ¶ 21.  Those are not wayward statements from misguided private citizens.  They are public comments by government officials who—Defendants admit—"plan and direct all aspects of the district's operations."  *See* Mack Decl. Ex. B; *see* WRCA§ 28A.150.230(1).  When the District paired its animus with an onerous permission-slip policy targeting LifeWise, it violated the First Amendment.

Additionally, Plaintiffs are likely to succeed on their other claims.  *First*, independent of the overt hostility claim, the District's permission-slip policy is unconstitutional because it is not neutral and generally applicable and fails strict scrutiny.  *Second*, the District's speech restrictions constitute viewpoint discrimination that must meet strict scrutiny in *all* forums (and they cannot). Moreover, excluding LifeWise from the community resource fair and flyer distribution channels— which are limited public forums—is unreasonable.  *Third*, the District's Bibles-in-backpacks policy violates Ms. Sweeny's right to control the religious upbringing of her children.  Each of these claims is independently meritorious, and Plaintiffs' constitutional injuries warrant injunctive relief.

## II.    ARGUMENT

**A.    Plaintiffs Are Likely To Succeed On The Merits Of Their Claims.**

**1.    The District Ignores—And Thereby Admits—That The Board's Hostility, Coupled With Its New Guidelines On Permission Slips, Violates The First Amendment (Count I).**

A plaintiff "prove[s] a free exercise violation by showing that official expressions of hostility to religion accompany laws or policies burdening religious exercise."  *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 525 n.1 (2022) (quotation omitted).  That occurred colorfully

PLAINTIFFS' REPLY IN SUPPORT OF THEIR
MOTION FOR PRELIMINARY INJUNCTION
CASE NO. 2:25-CV-02604-LK - 3

BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue Suite 4400
Seattle, Washington  98104
+1 206 623 1700

1  here.  Board members expressed open hostility to LifeWise, and no Board Member disavowed

2  those statements. *See* Mot. 4–5, 13–15.

3      Defendants offer no legal rejoinder to this, thus conceding its merit.  LCR 7(b)(2); *Nielsen*

4  *v. Unum Life Ins. Co. of Am.*, 58 F. Supp. 3d 1152, 1161 (W.D. Wash. 2014); *Madera W. Condo.*

5  *Ass'n v. First Specialty Ins. Corp.*, 2013 WL 4015649, at *4 (W.D. Wash. Aug. 6, 2013).  This,

6  standing alone, entitles Plaintiffs to a preliminary injunction. The two factual distinctions

7  Defendants draw—that Board members' comments cannot be attributed to it and that the Board

8  took no official action—are wrong.

9        **a.  The Board "Plan[s] and Direct[s] All Aspects Of the District's**
            **Operations," And Board Members' Hostile Comments Motivated**
10       **Their Actions.**

11      Defendants make no *legal* argument to rebut the hostility claim.  They suggest Board

12  Members' hostile statements "do not bind the Board, or represent the Board's position as a whole,"

13  but were expressions of Board members' "own personal views and opinions."  Resp. 3.  Not so.

14      As a legal matter, the question is not whether any Board member speaks for the Board, but

15  whether Board members' hostile comments—to which no member objected—show that animus

16  toward LifeWise motivated the change in policy targeting LifeWise that followed the comments.

17  The answer is yes.  *See Masterpiece Cakeshop v. Co. C.R. Comm'n*, 584 U.S. 617, 628 (2018).

18      The Board's comments carry weight because it is legally responsible for setting District

19  policy.  Defendants' admit the Board "plan[s] and direct[s] all aspects of the district's operations."

20  Mack Decl., Ex. B.  Washington law agrees.  *See* WRCA § 28A.150.230 (1) ("each common

21  school district board of directors, whether or not acting through its respective administrative staff,"

22  will "be held accountable for the proper operation of their district").  The Board elsewhere warns

23  its members to remain cognizant that their statements will be perceived by the public as "the

24  position of the board" (because they are).  *See* Ex. 1-H, Everett Public Schools, *Policy 1621 –*

25  *Board-Superintendent Operating Protocol*, at 3-4 (2024).[1]

---

26  [1] School Superintendent, Defendant Ian Saltzman, is an employee the Board hires, *see* RCW
27  28A.330.100, charged with ensuring its policies are carried out, *see* RCW 28A.400.030.  He is the
    Board Secretary and present at meetings.  *See id.*

PLAINTIFFS' REPLY IN SUPPORT OF THEIR
MOTION FOR PRELIMINARY INJUNCTION
CASE NO. 2:25-CV-02604-LK - 4

BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue Suite 4400
Seattle, Washington  98104
+1 206 623 1700

1    Because Board members set District policy, their hostile public statements are not the mere

2    rantings of misguided private citizens.    These statements are akin to those made by the

3    commissioners in *Masterpiece*, whose public hostility coupled with regulatory action violated the

4    First Amendment.  *See* 584 U.S. at 628.

5    **b.  The Board Took Official Action.**

6    Defendants suggest the Board has not taken "formal action" to "change or revise District

7    Policy and Procedure 2340/P, or any other District policies pertaining to release time for religious

8    instruction."  Resp. 11.  That is technically true and legally irrelevant.  The formal *policy* did not

9    change, but the Board announced new enforcement *guidelines* targeting LifeWise by name—after

10   publicly disparaging LifeWise, encouraging anti-LifeWise speakers, and meeting privately to

11   discuss the updated guidance.

12   These new guidelines resulted in on-the-ground changes complicating LifeWise's

13   operations.  The Motion, and the declarations attached to it, explain this timeline, the changes

14   related to permission slips, and the burdens those changes imposed.  *See, e.g.*, Mot. 6–8, 15–16,

15   18–20.  These burdens are real: There are at least fifteen examples of a student missing LifeWise

16   because of the new permission slip policy.  Ex. 1, Hammer Suppl. Decl. ¶¶8–10.  The new

17   permission slip policy especially burdens students of families that do not primarily speak English,

18   such as the daughters of a Ukrainian family (turned away on several separate occasions, the last of

19   which left one daughter "crying in the school while the LifeWise bus had to depart without her").

20   *Id.*

21   Government officials may not evince hostility to religion, change their enforcement

22   strategy to target religious expression, and then claim not to violate the First Amendment because

23   the formal policies from which enforcement guidelines flow remain unaltered.  The District,

24   through the Board, "plan[s] and direct[s] all aspects of the district's operations"—and they are

25   liable when they act on their animus.

26

27

PLAINTIFFS' REPLY IN SUPPORT OF THEIR
MOTION FOR PRELIMINARY INJUNCTION
CASE NO. 2:25-CV-02604-LK - 5

BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue Suite 4400
Seattle, Washington  98104
+1 206 623 1700

1

2

**2.      Plaintiffs Are Also Likely To Succeed On Count I Because The District's Permission Slip Guidelines Are Not Neutral Or Generally Applicable And Fail Strict Scrutiny.**

3

The District's permission slip guidelines violate the Free Exercise Clause for a second

4

reason: they are neither neutral nor generally applicable and fail strict scrutiny.  *See Church of*

5

*Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546 (1993); Mot. 16–18.

6

7

**a.    The Permission Slip Guidelines Treat LifeWise Differently Than Other Organizations.**

8

In its background section, the District claims that permission slips for other extracurricular

9

activities (the LEGO Club and the Boys & Girls Club) "are not comparable" because "there are

10

different legal considerations when parents seek to release students for religious instruction as

11

compared to other reasons." Resp. 11.  That is precisely the problem:  the First Amendment forbids

12

disfavoring "religious" programming on the basis that it is religious.

13

It is a distinction without a difference that LifeWise takes place "during the school day"

14

while other activities take place after school.  Resp. 11.  The determination "whether two activities

15

are comparable for purposes of the Free Exercise Clause must be judged *against the asserted*

16

*government interest that justifies the regulation*[.]"  *Tandon v. Newsom*, 593 U.S. 61, 62 (2021)

17

(per curiam) (emphasis added).  The District's asserted interest is "the safety of the students."

18

Resp. 10.[2]  But this concern should be identical *whenever* a child is released to a third party.

19

LifeWise and these other organizations are identically situated because they all are entrusted to

20

care for the students for the duration of their programming.  Yet only LifeWise families must

21

submit weekly permission slips.  That's not generally applicable.[3]

22

23

24

[2] The District also asserts an interest in avoiding the appearance of endorsing religion.  *See* Resp.
25  22–24.  But see *infra* at 7, 9-10.

26  [3] The District's attempt to distinguish *Mahmoud v. Taylor* on grounds that the policy there was
supposedly not neutral or generally applicable, Resp. 19-21, is mistaken.  *Mahmoud* did "not ask
27  whether the law at issue [was] neutral or generally applicable before proceeding to strict scrutiny."
606 U.S. 522, 564 (2025).

PLAINTIFFS' REPLY IN SUPPORT OF THEIR
MOTION FOR PRELIMINARY INJUNCTION
CASE NO. 2:25-CV-02604-LK - 6

BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue Suite 4400
Seattle, Washington  98104
+1 206 623 1700

1

**b. The Permission Slip Guidelines Fail Strict Scrutiny.**

2      The District has to satisfy strict scrutiny. *Tandon*, 593 U.S. at 62. Its claimed interest is

3  to "avoid[] an Establishment Clause violation" because absent the permission slip policy, "the

4  authority of the teachers [will] be[] placed behind that of Lifewise" and result in "the District being

5  seen as an agent of Lifewise." Resp. 22-23. The District offers no factual basis for this concern,

6  and "speculation is insufficient to satisfy strict scrutiny." *Fulton v. City of Philadelphia*, 593 U.S.

7  522, 542 (2021).

8      Nor is there a legal basis for this concern. "[T]he Establishment Clause does not include

9  anything like a 'modified heckler's veto, in which religious activity can be proscribed based on

10 perceptions or discomfort." *Kennedy*, 597 U.S. at 534 (citation modified); *see id.* at 535 ("Nor

11 does the [Establishment] Clause compel the government to purge from the public sphere anything

12 an objective observer could reasonably infer endorses or partakes of the religious." (alterations

13 omitted)). The Supreme Court has *rejected* a claim that release time religious instruction violates

14 the Establishment Clause. *See Zorach v. Clauson*, 343 U.S. 306 (1952).

15     The cases on which the District relies confirm that it lacks any compelling interest. *See*

16 *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 113 (2001) ("[T]he school ha[s] no valid

17 Establishment Clause interest[.]"). And *Culbertson v. Oakridge Sch. Dist. No. 76* broadly affirmed

18 an injunction mandating access to school facilities for a religious club, modifying only the portion

19 of the injunction that required *teachers* distribute permission slips to students—a practice LifeWise

20 does not seek. 258 F.3d 1061 (9th Cir. 2001).

21     **3.    The District Violated LifeWise's Free Speech Rights by Denying It Equal
            Access to Public Forums Because It Is Religious (Counts II–IV).**
22

23     The District claims that its community resource fair and flyer distribution system are

   nonpublic forums. It is wrong: These are *limited* public forums. But even if the District were
24
   right, it still loses: Excluding LifeWise *because it is religious* would violate the First Amendment
25
   in *any* forum.
26

27

BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue Suite 4400
Seattle, Washington  98104
+1 206 623 1700

1

**a. Viewpoint Discrimination Must Satisfy Strict Scrutiny In *All* Forums.**

2    In evaluating a free speech claim, courts "normally begin with a forum analysis," but they

3 "skip that step if the policy discriminates because of the 'viewpoint' of the speaker." *Waln v.*

4 *Dysart Sch. Dist.*, 54 F.4th 1152, 1162 (9th Cir. 2022) (citations omitted). That is because

5 "viewpoint discrimination" is "impermissible no matter the forum." *Nurre v. Whitehead*, 580 F.3d

6 1087, 1095 n.6 (9th Cir. 2009). As the Motion explained, the District prohibited LifeWise from

7 speaking at the resource fair and via its electronic and hardcopy flyers *because* of LifeWise's

8 religious message. That is a textbook First Amendment violation in any forum. *See Lamb's*

9 *Chapel v. Center Moriches Union Free Sch. Dist.*, 508 U.S. 384, 394 (1993).

10    The District made this analysis easy because it offered contemporaneous explanations for

11 its decisions to restrict LifeWise's speech. When the District excluded LifeWise from the

12 community resource fair, it explained why: The District "do[es] not allow religious-based

13 organizations of any type to participate in school-sponsored events." Mot. Ex. 1-G . When the

14 District barred LifeWise's hardcopy flyers, it explained why: The District "do[es] not allow

15 religious-based organizations of any type to participate in school-sponsored events." Mot. Ex. 1-

16 J. When the District rejected an electronic LifeWise flyer,[4] it explained why: "Per Procedure

17 4140P, we cannot share information that could be viewed as proselytizing." Mot. Ex. 1-K. The

18 District prohibited religious speech because it is religious and explained what it was doing in real

19 time. That is viewpoint discrimination, impermissible in all forums.[5] The Court should not credit

20 Defendants' litigation-stage excuses.

21

22

23

---

24 [4] The District argues that it never "rejected" a LifeWise flyer but instead only required changes.
The District's email that the flyer "has been denied," Mot. Ex. 1-K, speaks for itself, but even

25 requiring LifeWise to *change its message* constitutes impermissible speech repression.

26 [5] The District also suggests that LifeWise asked the wrong *person* at the District about participating
in the resource fair. Resp. 7. The District's contemporaneous response barred LifeWise from

27 participating *because* LifeWise was religious, not because it did not email the Family Engagement
Team).

PLAINTIFFS' REPLY IN SUPPORT OF THEIR
MOTION FOR PRELIMINARY INJUNCTION
CASE NO. 2:25-CV-02604-LK - 8

BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue Suite 4400
Seattle, Washington  98104
+1 206 623 1700

1

2

3          **b. The District's Asserted (But Unsupported) Interests Cannot Satisfy
              Strict Scrutiny.**

4       Viewpoint discrimination is impermissible per se.  *See Pleasant Grove City v. Summum*,

5   555 U.S. 460, 469 (2009).  But even if it were merely subject to strict scrutiny, the District loses.

6   The District claims that excluding LifeWise is necessary to avoid (i) the appearance of endorsing

7   religion and (ii) the potential for disruption.  These do not satisfy strict scrutiny.  *See Waln*, 54

8   F.4th at 1162.

9       **First**, the District's concern that the public "mistakenly believed that the District has

10  partnered with LifeWise" does not satisfy strict scrutiny.  *See* Resp. 16, 18.  As explained *supra* at

11  7, public "perceptions or discomfort" do not support censoring religious speech.  *Kennedy*, 597

12  U.S. at 534.

13      Curiously, the District relies on *Hills v. Scottsdale Unified School District. No. 48*, 329

14  F.3d 1044 (9th Cir. 2003) to justify its prohibition on hardcopy flyers based on "the religious

15  content of the flyers."  Resp. 17-18.  *Hills* holds that public misperception that a school endorses

16  a religious activity *cannot* justify censoring a religious organization's speech.  *Hills* rejected a

17  school district's attempt to exclude an advertising brochure for a Christian summer camp—a

18  brochure far more "religious" than LifeWise's flyer—for display in its lobby.  *Hills*, 329 F.3d at

19  1054; *see id.* at 1048 (brochure emphasizing the "importance" of "com[ing] to the knowledge of

20  JESUS CHRIST" when children are "as young as possible").

21      Refusing to allow a flyer "based on [its] religious nature" simply "cannot be justified"

22  where other groups "can advertise events or classes similar except for their lack of religious

23  viewpoint."  *Id.* at 1052.  So too LifeWise's attendance at the community resource fair:  The

24  purpose of attending the fair would be to tell community members about LifeWise, which

25  constitutes constitutionally permissible "advertis[ement] [of] a program with underlying religious

26  content."  *Hills*, 329 F.3d at 1053.

27      *Hills* also illustrates why the District's reliance on *Hazelwood School District v. Kuhlmeier*,

484 U.S. 260 (1988), and *Perry Education Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37

PLAINTIFFS' REPLY IN SUPPORT OF THEIR
MOTION FOR PRELIMINARY INJUNCTION
CASE NO. 2:25-CV-02604-LK - 9

BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue Suite 4400
Seattle, Washington  98104
+1 206 623 1700

(1983), *see* Resp. 15-16, is misplaced.  Those cases dealt with limitations on expression that was part of the school's curriculum and internal communications.  Flyers in the lobby are "not part of the teacher's instruction or curriculum," *Hills*, 329 F.3d at 1054, and not subject to the latitude afforded a school district in regulating curricular instruction (*Hazelwood*) or internal mail systems (*Perry*).

Moreover, the District's concern for "any mistaken inference of endorsement" is alleviated "by making it clear to students that a [religious] club's private speech is not the speech of the school," *Prince v. Jacoby*, 303 F.3d 1074, 1094 (9th Cir. 2002).  The District makes that clear. Mot. Ex. 1-I (flyers must note that LifeWise "is not a district-sponsored activity"); *see Hills*, 329 F.3d at 1052 ("The school's proper response is to educate the audience rather than squelch the speaker" (quotation omitted)).

Finally, the District's stated concern is undercut by the fact that *other* religious organizations place hardcopy flyers in the school lobby and appear at the community fair— presumably because those religious organizations are not disfavored by Board members.  *See* Mot. Ex. 1, ¶ 48.  Indeed, the District *partners* with other religious groups.  *See* Ex. 1, Hammer Suppl. Decl. ¶¶12–17.  Its stated fear of entanglement with LifeWise rings hollow given its embrace of other religious organizations.

***Second***, claims of classroom disruption are unfounded and do not satisfy strict scrutiny. There is no evidence any "disruption" has occurred, *see id.* ¶¶4, 6, and a total ban is not narrowly tailored to eliminate this hypothetical threat.  Moreover, the District relies on *DiLoreto v. Downey Unified School District Board of Education*, where the plaintiff sought to place a religious advertisement on a playing field used "for physical education classes and for school-sponsored sporting events," where "students at these activities would be a captive audience to the ads."  196 F.3d 958, 968 (9th Cir. 1999).  No student here would be "captive" to the community resource fair or the hardcopy flyers in the school lobby.  Any "disruption" could only be caused by unruly community members—and the District could address *those* concerns without restricting *LifeWise's* speech.

PLAINTIFFS' REPLY IN SUPPORT OF THEIR
MOTION FOR PRELIMINARY INJUNCTION
CASE NO. 2:25-CV-02604-LK - 10

BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue Suite 4400
Seattle, Washington  98104
+1 206 623 1700

1

2

3
### c. The Community Resource Fair And Flyer Distribution Systems Are Limited Public Forums.

The District declares that its resource fair and flyer distribution channels are "not public

4

5
forums open to free expression."  Resp. 14. It does not seriously engage with LifeWise's limited

6
public forum analysis.  *See, e.g.*, Mot. 10-11.  Nor does the District explain why LifeWise is

7
excluded from participation even under the rationales it offers.

8
The community resource fair is for "families to learn about providers in the community

9
and in our schools," including "[c]ommunity and school resource providers."  Compl. ¶ 44; *see*

10
Mot. Ex. 1, ¶ 41.  LifeWise is such a provider, yet it is excluded.  The electronic and hardcopy

11
flyer forums are likewise open to those offering services to school families.  LifeWise is such a

12
provider, yet it is excluded.

13
The District opens these forums for *others* to speak; it does not *itself* engage in speech, and

14
there is no risk of public confusion about the speaker. With respect to flyers, the District makes

15
this crystal clear.  Mot. Ex. 1-H.  These are all factors showing limited public forums, not the

16
unqualifiedly nonpublic forums the District imagines exist.

### d. Even If These Are Not Limited Public Forums, Excluding LifeWise Was Unreasonable.

17
Even if these were purely nonpublic forums, the District still loses because excluding

18
LifeWise was unreasonable.

19
The District argues it was justified in excluding LifeWise from the resource fair because

20
"the relatively narrow purpose of the event is to provide access to resources for students and

21
families, and LifeWise's participation in the Community Resource Fair is not consistent with these

22
purposes."  Resp. 17.  But LifeWise *does* provide "resources for students and families," namely,

23
*religious instruction*.  Elsewhere, the District claims that participants in the resource fair must offer

24
services "directly related to the District's educational mission of increasing student performance

25
in its vulnerable populations of students."  Resp. 15.  LifeWise does this too—one of its goals is

26
"improving student behavior and academic achievement," and its programming has been

27
associated with increased attendance and lower suspension rates. *See* Mot. Ex. 3-B, at 21-26.

PLAINTIFFS' REPLY IN SUPPORT OF THEIR
MOTION FOR PRELIMINARY INJUNCTION
CASE NO. 2:25-CV-02604-LK - 11

BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue Suite 4400
Seattle, Washington  98104
+1 206 623 1700

1    The District cannot explain how the Boys and Girls Club (a fair participant) "increase[s]

2  student performance in vulnerable populations," but LifeWise does not (except to state the

3  obvious: one is secular and the other religious).  Nor does the District explain how including fair

4  participants like Black Seed Farms, a farmer's co-op with *no* discernable connection to student

5  behavior and academic achievement, furthers the Response's description of the forum's purpose.

6    LifeWise "seeks to address a subject otherwise permitted" at the community fair and via

7  flyers channels (services offered to students and families), and the District can't exclude it simply

8  because it has a religious perspective.  *Good News Club*, 533 U.S. at 109; *Rosenberger v. Rector*

9  *& Visitors of Univ. of Va.*, 515 U.S. 819, 828-30 (1995); *Lamb's Chapel*, 508 U.S. at 390-93.  The

10  only reason the District believes LifeWise does not provide "access to resources for students and

11  their families," Resp. 17, is because it thinks *religious* education is not a legitimate resource.  The

12  First Amendment says otherwise.  *See Good News Club*, 533 U.S. at 108; *Lamb's Chapel*, 508

13  U.S. at 384.  "[V]iewpoint discrimination is *not* permissible when it is directed at speech otherwise

14  falling within the forum's limitations."  *Hills*, 329 F.3d at 1051.

15    The same analysis applies to the exclusion of LifeWise's hardcopy flyers.  The District

16  agrees that LifeWise can distribute its electronic fliers.  Resp. 18.  The electronic distribution

17  guidelines *require* flyers to be provided in hard copy. *See* Mot. Ex. 1-I, at 54.  Excluding LifeWise

18  (alone) from its otherwise comprehensive hardcopy flyer policy does not further that policy.

19    **4.    The District Violated Ms. Sweeny's Right To Control The Religious Education**
     **Of Her Children (Count IV).**
20

21    Plaintiffs are also likely to succeed on their claim that the District's Bibles-in-backpacks

22  policy violated Ms. Sweeny's Free Exercise right to direct her children's religious instruction.

23    The District first responds to this argument by feigning ignorance of its policy and the harm

24  it imposes.  It claims that it "has taken no action that would prevent a student from reading

25  LifeWise materials during non-instructional time."  Resp. 12.  That is true only if the District

26  ignores what the guidelines say: "[i]f religious materials are distributed off-site by [LifeWise] to

27  the students, *they are to be sealed in an envelope and placed directly into the student's backpack*

PLAINTIFFS' REPLY IN SUPPORT OF THEIR
MOTION FOR PRELIMINARY INJUNCTION
CASE NO. 2:25-CV-02604-LK - 12

BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue Suite 4400
Seattle, Washington  98104
+1 206 623 1700

1  *immediately upon their return to school.*" Mot. Ex. 1-E (emphasis added).  A student cannot read

2  a Bible that is sealed in an envelope in her backpack.  The District's declarations confirm the

3  guidelines mean what they say, explaining that the rule "require[s] students returning from

4  LifeWise to keep any items they received in a sealed envelope in their backpacks *during the school*

5  *day*." Young Decl. ¶ 14 (emphasis added).  The District's *post hoc* interpretation of the guidelines

6  does not change their meaning.  If the District now wants to change its guidelines, it must amend

7  them (a result Plaintiffs would welcome).  But rationalizations asserted in litigation do not alleviate

8  constitutional concerns.

9        The District then reverts to its purported compelling interest in "having an undisrupted

10 school session conducive to the students' learning."  Resp. 25 (quoting *Mahmoud*, 606 U.S. at

11 566).  But the District, which bears the burden here, fails to offer any facts that would indicate that

12 school would be disrupted by silent Bible reading.  The District's concern can be fully satisfied by

13 simply requiring students to keep their (unsealed) LifeWise materials in their backpacks during

14 instructional times when other personal reading materials must be put away.

15       This claimed concern for class disruption is also unsupported by facts.  The District asserts

16 that it has received "concerns about students returning to school with LifeWise branded items,

17 candy, and literature" and that students "attempt[ed] to provide those items to other students during

18 the school day."  Resp. 8 (citing Young Decl. ¶¶ 12–14). But LifeWise does not send students back

19 to school with candy (and candy left at a doorstep cannot disrupt *school* instruction).  Ex. 1,

20 Hammer Suppl. Decl. ¶4.  And LifeWise's branded Bibles and Recap cards are for students'

21 *personal* use.  *See* Mot. Ex. 1, ¶33.  In any event, the District has not shouldered its burden to show

22 that its categorical restriction on students' personal use of LifeWise's religious materials is

23 "narrowly tailored" to prevent disruption.  *Tandon*, 593 U.S. at 65 (quotation omitted).  Any

24 instances of actual disruption could be readily addressed on a per-student basis, without burdening

25 Ms. Sweeny's parental rights.

26       The District also argues that its policy is necessary to avoid violating the Establishment

27 Clause.  *See* Resp. 22–24.  But there is no risk of confusing the District for an agent of LifeWise

PLAINTIFFS' REPLY IN SUPPORT OF THEIR
MOTION FOR PRELIMINARY INJUNCTION
CASE NO. 2:25-CV-02604-LK - 13

1  by allowing students to access religious literature during non-instructional periods. *See also supra*

2  at 7, 9-10. Although the District appears to think otherwise, Plaintiffs do not seek an injunction

3  permitting LifeWise or LifeWise students to distribute materials. They simply want to ensure that

4  LifeWise students can read *their own* materials. In any event, if the District's concern is perceived

5  endorsement, they can just issue a disclaimer—if "pupils [or parents] do not comprehend so simple

6  a lesson, then one wonders whether the [District] can teach anything at all." *Hills*, 329 F.3d at

7  1055 (quotation omitted).

8  **B.    Plaintiffs Are Being Irreparably Harmed.**

9  First Amendment violations "unquestionably constitute[] irreparable injury." *Mahmoud*,

10  606 U.S. at 569. The District's argument that Plaintiffs are not irreparably harmed ignores the

11  facts and law. The District has barred LifeWise from accessing forums. It has imposed a

12  permission-slip policy that causes students to miss LifeWise lessons. Ex. 1, Hammer Suppl. Decl.

13  ¶¶9–10. And it requires Bibles to remain in backpacks where they cannot be studied by LifeWise

14  students. These constitutional injuries are all irreparable.

15  **C.    The Equities And The Public Interest Favor Injunctive Relief.**

16  The District claims that an injunction would (i) "expose others to risk of harm" and

17  "negatively impact[] the educational services provided to other students" and (ii) increase

18  administrative burdens. *See* Resp. 26. It offers no explanation why removing barriers to LifeWise

19  would expose others to harm. And removing the onerous permission slip burdens the District has

20  imposed would *ease* the administrative burden on the school, which currently spends an inordinate

21  amount of time confirming twice a week that more than 60 students received a permission slip for

22  a class and that each permission slip names the single individual who is authorized from LifeWise

23  to chaperone the students. This administrative burden would evaporate if the District simply

24  treated LifeWise like other organizations.

25  Finally, the District also claims that courts must be "cautio[us]" when enjoining the

26  government and that the "public interest weighs heavily against [such] judicial interference."

27  Resp. 13. But the public interest and the equities always favor enjoining constitutional violations.

PLAINTIFFS' REPLY IN SUPPORT OF THEIR
MOTION FOR PRELIMINARY INJUNCTION
CASE NO. 2:25-CV-02604-LK - 14

BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue Suite 4400
Seattle, Washington 98104
+1 206 623 1700

1    *See Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 695

2    (9th Cir. 2023) (en banc).

### III.    CONCLUSION

4        The Court should issue a preliminary injunction.

6        DATED January 15, 2026                    Respectfully submitted,

7                                                    *s/ Barbara A. Smith*

8                                                    Barbara A. Smith (*pro hac vice*)
                                                      Seth M. Reid (*pro hac vice*)

9                                                    Kolten C. Ellis (*pro hac vice*)
                                                      BRYAN CAVE LEIGHTON PAISNER LLP

10                                                   211 N. Broadway, Suite 3600
                                                      St. Louis, MO 63102

11                                                   Phone: (314) 259-2000
                                                      barbara.smith@bclplaw.com

12                                                   seth.reid@bclplaw.com
                                                      kolten.ellis@bclplaw.com

13
                                                      *s/ Caleb T. Mathena*

14                                                   Caleb T. Mathena
                                                      WA Bar #57001

15                                                   BRYAN CAVE LEIGHTON PAISNER LLP
                                                      999 Third Ave., Suite 4400

16                                                   Seattle, WA 98104
                                                      Phone: (206) 600-6641

17                                                   caleb.mathena@bclplaw.com

18                                                   David J. Hacker (*pro hac vice*)

19                                                   Jeremiah G. Dys (*pro hac vice*)
                                                      Holly M. Randall (*pro hac vice*)

20                                                   FIRST LIBERTY INSTITUTE
                                                      2001 West Plano Parkway, Suite 1600

21                                                   Plano, TX 75075
                                                      dhacker@firstliberty.org

22                                                   jdys@firstliberty.org
                                                      hrandall@firstliberty.org

23
                                                      *Attorneys for Plaintiffs LifeWise, Inc. and*

24                                                   *Sarah Sweeny*

25

26

27

PLAINTIFFS' REPLY IN SUPPORT OF THEIR
MOTION FOR PRELIMINARY INJUNCTION
CASE NO. 2:25-CV-02604-LK - 15

## CERTIFICATE OF COMPLIANCE

I certify that this memorandum contains 4,195 words, exclusive of portions not counted under LCR 7(e)(6), in compliance with the Local Civil Rules.

*s/ Caleb T. Mathena*
Caleb T. Mathena

PLAINTIFFS' REPLY IN SUPPORT OF THEIR
MOTION FOR PRELIMINARY INJUNCTION
CASE NO. 2:25-CV-02604-LK - 16

BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue Suite 4400
Seattle, Washington 98104
+1 206 623 1700

1

2

3

**CERTIFICATE OF SERVICE**

I the undersigned hereby certify under penalty of perjury that I caused the foregoing to be served on the parties listed below via CM/ECF on January 15, 2026.

4

5

6

7

8

P E Leitch
PATTERSON BUCHANAN FOBES & LEITCH INC PS
1000 SECOND AVE
30TH FLR
SEATTLE, WA 98104-1064
206-462-6700
Fax: 206-462-6701
Email: CPL@pattersonbuchanan.com

9

10

11

12

13

Sarah Spierling Mack
PACIFICA LAW GROUP LLP
401 UNION ST
STE 1600
SEATTLE, WA 98101
425-602-1223
Email: Sarah.Mack@pacificalawgroup.com

14

*Attorneys for Defendants*

15

16

17

Dated: January 16, 2026

*s/ Caleb T. Mathena*
Caleb T. Mathena

18

19

20

21

22

23

24

25

26

27

PLAINTIFFS' REPLY IN SUPPORT OF THEIR
MOTION FOR PRELIMINARY INJUNCTION
CASE NO. 2:25-CV-02604-LK - 17

BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys at Law
999 Third Avenue Suite 4400
Seattle, Washington 98104
+1 206 623 1700